## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| |
|---|
| YVONNE PERKINS and MOORE BAIL BONDS, LLC, |
|      *Plaintiffs*, |
|      v. |
| RACHEL HALAS, ROGER BROOKS, MELISSA MORRILL, JIM ANTONELLI, JOE LeROSE, and TONY MAHER, |
|      *Defendants*. |

No. 3:18cv1081(MPS)

### RULING ON MOTION FOR SUMMARY JUDGMENT

Yvonne Perkins and Moore Bail Bonds, LLC bring this action against Danbury police officers Rachel Halas, Roger Brooks, Melissa Morrill, Jim Antonelli, Joe LeRose, and Tony Maher. The amended complaint alleges unlawful recording and disclosure of phone calls in violation of 18 U.S.C. §§ 2510 *et seq*. and Conn. Gen. Stat. § 52-570d (counts 1, 2), unlawful search in violation of the Fourth Amendment (count 3), deprivation of liberty and property interests without due process of law in violation of the Fourteenth Amendment (count 5)[1], tortious interference with business expectancies (count 6), and invasion of privacy (count 7). ECF No. 32. The defendants move for summary judgment on all counts. ECF No. 39.[2] For the reasons that follow, I grant the defendants' motion for summary judgment on counts 1, 2, 5-7 and deny the motion on count 3.

### I.   Factual Background

The following facts are taken from the parties' Local Rule 56(a) Statements and exhibits and are undisputed unless otherwise indicated.

---

[1] Count 4 previously was dismissed. ECF No. 26.
[2] The Court (Haight, J.) heard oral argument on the motion. ECF No. 45. The case subsequently was transferred to me. ECF No. 48. I reviewed the transcript of the oral argument. See ECF No. 46.

Moore Bail Bonds, LLC is located in Danbury, Connecticut.  ECF No. 42-3 at 2.  Perkins asserts that at all times relevant to this case, she was the sole owner and member of the business.  ECF No. 42-3.[3]  Defendants contend, however, that the business was owned and/or operated by Dameisha Moore.  ECF No. 39-2 ¶ 2.

On January 6, 2015, the Danbury Police Department received a complaint about Dameisha Moore and Michael Baptiste concerning the possible unlawful retention and misappropriation of $65,065 of bond collateral belonging to an individual named Cameron McTaggart.  ECF No. 39-2 ¶ 3; ECF No. 42-1 ¶ 3.  Defendant Brooks assisted another officer during the complaint intake.  *Id.*  He had no further investigative involvement after that point and subsequently retired from the department.  *Id.*

In January 2016, Defendant Halas was assigned to the criminal investigation of Moore and Baptiste.  *Id.*

Defendant LeRose sent emails to the department regarding the list of bond companies published at the Danbury Police Department booking area and Plaintiff Moore Bail Bonds' bond-issuing activity.  ECF No. 39-2 ¶ 6; ECF No. 42-1 ¶ 6.

On May 31, 2016, LeRose emailed Captain Mulvey that he had noticed that

[w]e accepted bail bonds from Moore Bail Bonds.  We currently have an active warrant for Dameisha Moore (owner) and her former employee at Moore Bail Bonds[,] Michael Baptiste.  Both are wanted on felony warrants for Larceny 1st and Conspiracy to Commit Larceny 1st.
       Although neither party presented themselves to post these bonds (Yvonne Perkins did), I do not believe that the Danbury Police Department should be doing any business with Moore Bail Bonds due to these circumstances.

---

[3] The plaintiffs' exhibit appears to be from the Connecticut Secretary of State's website.  Although the defendants suggest that it should not be considered because it is unauthenticated, I have reviewed the website and confirmed that the online records indicate that Perkins was listed as the owner. https://service.ct.gov/business/s/onlinebusinesssearch?businessNameEn=HL3FC2I23quvQcpXx9aJ2wrTYpdj9uZbt bMFhd0GO1rSYfyJHfVXoKmwlJa7Xt09

ECF No. 42-12 at 2[4]; ECF No. 33 ¶ 9 (admitting that LeRose wrote to Mulvey that "I do not believe that the Danbury Police Department should be doing any business with Moore Bail bonds.")

Perkins alleges that LeRose "followed a pattern and practice of failing to enter into the NCIC [National Crime Information Center] database the names of persons bonded out by the plaintiffs who have absconded, although he does enter into the NCIC database the names of absconders whose bonds are posted by competitors of the plaintiffs," ECF No. 32 ¶ 11, and points to her sworn interrogatory response, in which she states that she bases this allegation on her conversation with LeRose on November 6, 2017.  ECF No. 42-2 ¶¶ 4, 6.  For his part, LeRose avers that he entered data into the NCIC database regarding criminals who have absconded or otherwise failed to report to court following arrest but that at no time did he deliberately omit entries from Moore Bail Bonds in the NCIC database.  ECF No. 39-7, LeRose Aff. ¶¶ 7-8.

On June 2, 2016, pursuant to a lawfully executed arrest warrant, Moore and Baptiste were arrested for larceny arising from the January 6, 2015 complaint.  ECF No. 39-2 ¶ 7; ECF No. 42-1 ¶ 7; ECF No. 39-5, Morrill Aff. ¶ 7.  At the time of the arrest, Moore and Baptiste were in a car that was owned by Perkins.  ECF No. 39-2 ¶ 9; ECF No. 42-1 ¶ 9; ECF No. 39-5, Morrill Aff. ¶ 7  Moore was driving.  ECF No. 39-2 ¶ 9; ECF No. 42-1 ¶ 9.  Perkins was not in the vehicle.  ECF

---

[4] The defendants object to the inclusion and consideration of this email, emails from Maher, ECF No. 42-13, and emails from Halas, ECF Nos. 42-44, 42-7, 42-9, because they are unauthenticated documents.  The defendants also object to plaintiffs' exhibits of the Danbury Policy Department's tow policy, ECF No. 42-10, and an incident report authored by Morrill, ECF Nos. 42-14, on the same grounds.  Evidence is authenticated if its proponent provides sufficient evidence to demonstrate that it "is what the proponent claims it is." Fed. R. Evid. 901(a).  "[T]he bar for authentication of evidence is not particularly high."  *United States v. Al–Moayad*, 545 F.3d 139, 172 (2d Cir. 2008) (internal quotation marks and citation omitted).  "[T]he court has the discretion to consider unauthenticated or otherwise objectionable evidence [on summary judgment] where it is apparent that the party may be able to authenticate and establish the admissibility of those documents at trial." *Delgado v. City of Stamford*, No. 3:11-cv-01735, 2015 WL 6675534, at *5 n.3 (D. Conn. Nov. 2, 2015).  The defendants offer no specific reason to doubt the authenticity these documents.  They do not claim that they were not produced in discovery or in response to Freedom of Information Act requests, that they are anything other than what they purport to be, or are otherwise false or fabricated.  Although this issue easily could have been avoided had the plaintiffs simply authenticated their exhibits, this evidence is capable of being "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  Accordingly, I will consider them.

No. 42-14.  Moore was arrested by Danbury officers who are not defendants.  ECF No. 39-2 ¶ 7; ECF No. 42-1 ¶ 7.

**PERKINS'S VEHICLE**

Of the defendants, only Morrill and Antonelli were on the scene of the arrest.  ECF No. 39-2 ¶ 8; ECF No. 42-1 ¶ 8.  According to Morrill, when she arrived, "Moore and Baptiste had already been pulled over" and "had pulled off of the road and into a CVS parking lot where they were arrested."  ECF No. 39-5, Morrill Aff. ¶ 7.  Antonelli arrived after Morrill.  ECF No. 39-5, Morrill Aff. ¶ 8; ECF No. 39-6, Antonelli Aff. ¶ 8.

Perkins alleges that Morrill and Antonelli searched the vehicle in violation of the Fourth Amendment.  The defendants disagree.  Morrill avers that she and Antonelli conducted a "vehicle inventory prior to the vehicle being towed pursuant to Danbury Police Department written policy."  ECF No. 39-5, Morrill Aff. ¶ 8.  They found loose cash, bond documents, and paperwork.  ECF No. 39-5, Morrill Aff. ¶ 9; ECF No. 39-6, Antonelli Aff. ¶ 9.  They found Moore's purse inside the trunk.  ECF No. 42-14 at 2.  At some point following Moore's arrest, Perkins arrived.  ECF No. 39-5, Morrill Aff. ¶ 10; ECF No. 42-14.  She was instructed to pick her vehicle up at the towing station.  ECF No. 39-5, Morrill Aff. ¶ 10; ECF No. 39-6, Antonelli Aff. ¶ 10.  See ECF No. 42-14 (incident report completed by Morrill indicating that Perkins "was going to the tow company with the tow truck driver").  The vehicle was towed from the scene.  ECF No. 39-2 ¶ 10; ECF No. 42-1 ¶ 10.  Morrill and Antonelli brought Moore's purse to the police station where Moore told them to give it to Perkins.  ECF No. 42-14.

**PERKINS'S RECORDED CONVERSATIONS**

Following her arrest, Moore was taken to the booking area at the Danbury Police Department.  ECF No. 39-2 ¶ 11; ECF No. 42-1 ¶ 11.  She had telephone conversations with

4

Perkins on the phone located in the booking area. ECF No. 39-2 ¶ 11; ECF No. 42-1 ¶ 11. At the time, there were four signs posted in the Danbury Police Department booking area stating: "ATTENTION VIDEO AND AUDIO SURVEILLANCE IN PROGRESS." ECF No. 39-2 ¶ 12; ECF No. 42-1 ¶ 12. Each sign was approximately 18 inches by 24 inches. *Id.* In addition, there was a sign stating "Phone conversation is RECORDED" on the outside of the "photo cage" where the phone used by people in the booking area was located. ECF No. 39-2 ¶ 12; ECF No. 42-1 ¶ 12.

The telephone calls between Moore and Perkins were recorded. ECF No. 39-2 ¶ 13; ECF No. 42-1 ¶ 13. The recordings were collected by Danbury Police internal affairs. *Id.* Defendant Halas listened to one or more of the recordings. *Id.* No other defendants were involved in recording, reviewing, or disseminating the phone calls. ECF No. 39-2 ¶ 14; ECF No. 42-1 ¶ 14.

**HALAS'S COMMUNICATIONS**

Halas contacted the Connecticut Insurance Department regarding Moore's arrest and her subsequent phone conversations with Perkins. ECF No. 39-2 ¶ 17; ECF No. 42-1 ¶ 17; *see also* ECF No. 32 ¶¶ 14, 18. On June 2, 2016, Halas emailed Amy Stegall and Antonio Caporale of the Connecticut Insurance Department that Baptiste and Moore had been arrested on larceny charges as a "result of [Halas's] investigation into the failure of Moore Bail Bonds to return collateral in the MacTaggart case." ECF No. 42-4. The email further stated:

> I am concerned about Yvonne Perkins, who is now writing bonds for Moore Bail Bonds as a result of both Michael and Dameisha losing their bond licenses. When Michael and Dameisha were found this morning, they were driving a Honda Civic registered to Yvonne Perkins. The officers who stopped the car and conducted an inventory search incident to arrest found numerous bond papers and loose cash in the vehicle with Michael and Dameisha. Yvonne was not in the car with them and I am wondering if this is a violation under your department? The officers saw cash wrapped in paper and loose cash in a grocery bag. Yvonne showed up at the scene and was yelling that this was an "illegal search" and she wanted all the cash and bond papers. The officers handed the cash and papers to

Yvonne.… While being processed, the officers said that Dameisha called Yvonne Perkins and told her to just worry about the bond business and to keep the business running.

I'm hoping your agency can investigate Yvonne Perkins and her taking in of bonds and returning collateral.  I suspect Dameisha and Michael are still running the business with Yvonne holding the license.  I suspect Yvonne, along with Michael and Dameisha, continue to exploit the system.  I'm wondering if a review of her paperwork or bond record will reveal criminal acts or at least administrative violations in which your agency can take action.

*Id.*

Halas also contacted Michael Whitlock of the American Surety Company.  ECF No. 39-2 ¶ 17; ECF No. 42-1 ¶ 17.  The Plaintiffs conducted their bail bond business as agents of American Surety.  ECF No. 32 ¶ 19.  Halas avers that the phone conversations between Perkins and Moore indicated "continued business activity in that Moore instructed Perkins to continue operating the bail bonds business despite her arrest" and she thought that Moore's arrest for larceny rendered it unlawful for her to continue issuing bonds.  ECF No. 39-3, Halas Aff. ¶¶ 10-11.  She contacted Whitlock because she thought it was her duty to report the information because "it may have been in violation of some rule or procedure for the bond business."  *Id*. ¶ 13.

Whitlock thereafter terminated the insurance coverage "issued to the Plaintiffs."  ECF No. 39-2 ¶ 18; ECF No. 42-1 ¶ 18.  Defendant Maher sent an email to Danbury Police Department personnel stating that he had removed Plaintiffs from the list of approved bail bond companies.  ECF No. 39-2 ¶ 19; ECF No. 42-1 ¶ 19.  The email stated "I have been advised that Moore Bail Bonds has temporarily been suspended from doing business at the Danbury Police Department.  I have temporarily blocked them out on the bail bond sheet in booking."  ECF No. 42-13.

On July 6, 2016, Halas emailed Warren Murray, who plaintiffs allege was an employee of the Connecticut Judicial Branch, a copy of a recorded call between Moore and Perkins after Moore's arrest and stated that the contents "demonstrates how Moore is running the bond business and is directing Yvonne what to do with the business."  ECF No. 42-7 at 2.  Halas further stated "I

should at least let the CT DOI know as Moore should not be running the business." ECF No. 42-7 at 2.

On July 7, 2016, Halas emailed Amy Stegall and Antonio Caporal of the Connecticut Insurance Department that "Yvonne Perkins bonded somebody out of Bridgeport last night about midnight" and that she was "with Michael Baptiste when she bonded out the man." ECF No. 42-8 at 2. She further stated that "Moore Bail Bonds… charged [the man] $270 then an additional $350 fee because he didn't have a co-signer….My concern is that other PD's and lockups are continuing to allow Perkins to write bonds when she should not be . . . ." ECF No. 32 ¶ 25; ECF No. 33 ¶ 25.

On July 11, 2016, Halas emailed Amy Stegall and Antonio Caporale

> I would like to share with you a recording of a phone call that Dameisha Moore made to Yvonne Perkins on the day of her arrest while she was in lock up. Dameisha made this call on a recorded line from the police department. I am considering this a joint investigation with your department as I believe there may be additional criminal charges. The phone call demonstrates th[at] Dameisha is still running the bond business, although her license has been revoked and is instructing Yvonne to use money from the files that were in her car at the time of her arrest (bond files) for various purposes related to her arrest (i.e. paying her attorney $1,000). The phone call is attached below. I have notified the state's attorney of this and the fact that Perkins wrote a bond last week for a party in Bridgeport lock up when she is uninsured and under investigation by your department.

ECF No. 42-9.

In January 2017, the Plaintiffs obtained new insurance to issue bonds and were reinstated to the list of approved bail bond companies. ECF No. 39-2 ¶ 20; ECF No. 42-1 ¶ 20. They were contacted by a woman about obtaining a bond for her son, James Kaffka. ECF No. 39-2 ¶ 20; ECF No. 42-1 ¶ 20. Defendant Maher advised Dameisha Moore that Mr. Kaffka's mother had called a different bail bond company. ECF No. 39-2 ¶ 21; ECF No. 42-1 ¶ 21. Notwithstanding this, the Plaintiffs were retained by Mr. Kaffka's mother. ECF No. 39-2 ¶ 22; ECF No. 42-1 ¶ 22. On

January 3, 2017, Perkins filed a complaint against Maher with the police chief.  ECF No. 39-8, Maher Aff. ¶ 9.

## II.    LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (internal quotation marks and citations omitted).  In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc*., 715 F.3d 417, 427 (2d Cir. 2013).  "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013).  The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co*., 654 F.3d 347, 358 (2d Cir. 2011).  "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Id.* (internal quotation marks omitted).

## III.   DISCUSSION

### Count 1

In count 1, Perkins alleges that Halas knew that Perkins's telephone conversations with Moore were unlawfully recorded and disclosed them to others in violation of the federal wiretap

statute, 18 U.S.C. §§ 2510, *et seq.*[5]  ECF No. 32 ¶¶ 17-18.  Halas moves for summary judgment on the grounds that the recordings were not unlawful under the statute because there was no expectation of privacy in light of the signage "informing Moore when she made the calls of potential recording."  ECF No. 39-1 at 10.

The wiretap statute "generally prohibits the intentional interception of wire communications, including telephone conversations, in the absence of authorization by court order. 18 U.S.C. §§ 2510–2521."  *United States v. Willoughby*, 860 F.2d 15, 19 (2d Cir. 1988).  It provides a cause of action against those who intentionally disclose or use the contents of an unlawfully intercepted communication.  Specifically, section 2511(1)(c) provides that "any person" who—

> intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection . . . .

> shall be subject to suit . . . .

"The prohibition against interception does not apply, however, when 'one of the parties to the communication has given prior consent to such interception.'"  *Willoughby*, 860 F.2d at 19 (quoting 18 U.S.C. § 2511(2)(c)[6]).  *See Cohen v. Casper Sleep Inc.*, No. 17CV9325, 2018 WL 3392877, at *3 (S.D.N.Y. July 12, 2018) (the federal wiretap statute is a "one-party consent statute").  Consent is "construed broadly" and may be "express or implied."  *United States v. Amen*, 831 F.2d 373, 378 (2d Cir. 1987)).  *See also In re State Police Litig.*, 888 F. Supp. 1235, 1266 (D.

---

[5] In the amended complaint, count 1 is asserted by both plaintiffs against all defendants.  ECF No. 32 at 8.  However, in their opposition brief and during oral argument, the plaintiffs clarified that count 1 is asserted by Perkins against Halas.  See ECF No. 42 at 1 ("Perkins alleges that she was the victim of the unlawful interception and disclosure of five of her telephone communications by the defendant Halas"); ECF No. 46, Tr. at 24 (counsel stating that defendants other than Halas were not involved in the allegations underlying count 1).  Accordingly, summary judgment is granted to Brooks, Morrill, Antonelli, LeRose, and Maher on count 1.

[6] 18 U.S.C. § 2511(2)(c) provides in pertinent part: "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where … one of the parties to the communication has given prior consent to such interception."

Conn. 1995) ("The Act exempts from coverage any interception made with the consent of one of the participants, and such consent can be implied." (footnote omitted)).  Consent can be "implied" from "surrounding circumstances indicating that the [recorded party] knowingly agreed to the surveillance." *Amen*, 831 F.2d at 378.  For example, "[t]he Second Circuit has held that prison inmates impliedly consent to have their telephone conversations monitored where they have received notice of the monitoring and nevertheless use the prison telephones." *United States v. Baker*, No. 21CR6042, 2022 WL 2079698, at *6 (W.D.N.Y. Feb. 17, 2022).  *See also Cisse v. James*, No. 20CV3869, 2021 WL 11442471, at *12 (S.D.N.Y. July 2, 2021) ("Courts in the Second Circuit have consistently found that, so long as a prisoner is given adequate notice that his telephone calls will be recorded, his use of prison telephones constitutes implied consent to recording.")

Perkins argues that genuine issues of material fact exist as to whether or not she consented to the recording of her calls, thereby precluding summary judgment.  ECF No. 42 at 5.  She claims she had no notice that the calls were being recorded, and points to her interrogatory response that she was told by a Danbury police officer that if a line was recorded, there would be beeps.  ECF No. 42-2 ¶ 10.  Her interrogatory response states that there were no beeps on the calls at issue.  *Id.* The defendants argue that the statement by the Danbury police officer is inadmissible hearsay. ECF No. 43 at 2.  It is likely not hearsay because it may be considered for the fact that it was made to Perkins rather than for its truth.  But I need not decide that issue because what Perkins believed about whether the line was recorded is not relevant.  The undisputed facts show that Moore had sufficient notice that her telephone conversations were recorded such that her use of the telephone to speak to Perkins implied the consent of one party to the call.

The undisputed evidence shows that Moore spoke to Perkins on a phone in the booking area of the police station, where four large signs, each measuring 18 inches by 24 inches, were posted that stated "ATTENTION VIDEO AND AUDIO SURVEILLANCE IN PROGRESS." ECF No. 39-2 ¶ 12; ECF No. 42-1 ¶ 12.  Another sign – located on the outside of the photo cage where the phone used by people in the booking area is located – stated "Phone conversation is RECORDED."  *Id.*  Moore was on notice that calls were recorded and her use of the telephone to speak to Perkins implied consent to the recording of the conversations.  Because one party to the conversation gave consent, the federal wiretap statute was not violated.  *See* 18 U.S.C. § 2511(2)(c).  Summary judgment is granted to Defendant Halas on count 1.

**Count 3**

In count 3, Perkins alleges that Morrill and Antonelli violated her Fourth Amendment rights by conducting a warrantless search of her car and providing information to Halas about documents they found.[7]  ECF No. 32 ¶ 12.

The defendants argue that they are entitled to summary judgment because "no search occurred [in violation of the Fourth Amendment] but rather [the defendants conducted] a vehicle inventory" in anticipation of the vehicle being towed.  ECF No. 39-1 at 13.

Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  *Coolidge v. New Hampshire*, 403 U.S. 443, 481 (1971).  One of these exceptions is an inventory search.  "It is well recognized in Supreme Court precedent that, when law enforcement officials take a vehicle into custody, they

---

[7] Because there are no allegations directed at them, summary judgment is granted on count 3 as to Brooks, Maher, and LeRose for lack of personal involvement.  Summary judgment is also granted on count 3 as to Halas.  Although Halas relayed to others the contents of the search, there is no evidence that she had any involvement in the search.  The undisputed evidence is that Morrill and Antonelli were the only defendants on the scene.  ECF No. 39-2 ¶ 8; ECF No. 42-1 ¶ 8.

may search the vehicle and make an inventory of its contents without need for a search warrant and without regard to whether there is probable cause to suspect that the vehicle contains contraband or evidence of criminal conduct." *United States v. Lopez*, 547 F.3d 364, 369 (2d Cir. 2008).  *See Illinois v. Lafayette*, 462 U.S. 640, 643 (1983) ("[T]he inventory search constitutes a well-defined exception to the warrant requirement.").  Inventory searches are "constitutional under the Fourth Amendment because they 'serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.'"  *United States v. Mendez*, 315 F.3d 132, 137 (2d Cir. 2002) (quoting *Colorado v. Bertine*, 479 U.S. 367, 372 (1987)).  "Because of the danger to privacy interests posed by allowing police officers to conduct warrantless searches,…the Supreme Court has required that inventory searches be performed using standardized criteria or established routine."  *United States v. Williams*, 930 F.3d 44, 54 (2d Cir. 2019)(internal quotation marks and citations omitted).  "A police department's standardized procedures may be established at trial by written rules and regulations or by testimony regarding the department's standard practices."  *Id.*  A police department's procedures must be adequate to "safeguard the interests protected by the Fourth Amendment,… so that officers are not allowed so much latitude as to whether, when, and how to search that inventory searches, in practice, become a purposeful and general means of discovering evidence of crime." *Id.* at 55 (internal quotation marks and citation omitted).

Perkins argues the defendants are not entitled to summary judgment because they have not demonstrated such a policy.  The only evidence the defendants offer as to the Danbury Police Department's inventory policy is Morrill's statement that she and Antonelli "executed a vehicle inventory prior to the vehicle being towed pursuant to Danbury Police Department written policy," ECF No. 39-5, Morrill Aff. ¶ 8, and Antonelli's statement that "Morrill began performing an

inventory of the items in the vehicle being operated by Moore and Baptiste pursuant to Danbury Police Department policy," and that the items in the vehicle "were properly itemized and inventoried."  ECF No. 39-6, Antonelli Aff. ¶¶ 8, 9.  Although Morrill refers to a written policy, the defendants did not submit any such policy.  The plaintiffs submitted what purports to be the department's tow policy, ECF No. 42-10, which does not contain any discussion of inventory searches.

This evidence falls short.  Although not "every detail of search procedure must be governed by a standardized policy," *Lopez*, 547 F.3d at 371, Morrill's and Antonelli's cursory statements provide absolutely no information about the substance of the Danbury police department's policy. Courts have found that similar scanty evidence fails to demonstrate standardized criteria or an established routine.

In *United States v. Faison*, No. 15 CR. 186, 2015 WL 5915964 (S.D.N.Y. Oct. 8, 2015), an officer testified that an inventory was made pursuant to a standard police department practice but the government "did not elicit from [the] officer what that standard practice is."  *Id.* at *4 n.2. The Court found that the officer's "passing reference to a standard NYPD practice is not sufficient to demonstrate that the inventory search conducted of [defendant's] vehicle was performed pursuant to 'established' or 'standardized' procedures.'" *Id.*  Similarly, in *United States v. Johnson*, No. TDC-16-0135, 2017 WL 2256599, at *1 (D. Md. May 22, 2017), the Court held that an officer's testimony that the search was an inventory search was not sufficient because the government did not define the policy.  Specifically, the government "presented neither a written policy articulating the [police department's] standardized inventory procedures nor testimony describing [department's] standard inventory practices."  *Id.* at *10.  *See also United States v. Marshall*, 986 F.2d 1171, 1175 (8th Cir. 1993) (government failed to demonstrate search was an

inventory search where officer's testimony "did not mention any standard procedures" and government did not otherwise present any evidence that demonstrates the existence of standardized inventory procedures); *United States v. Caskey*, No. 11-301, 2012 WL 3031144, at *6 (D. Minn. July 25, 2012) (mere fact that an officer testified that he complied with the police department's inventory policy, where the government did not define the policy, was not sufficient to demonstrate standard police procedures).

Because a question of fact exists as to whether the search violated the Fourth Amendment, summary judgment on count 3 as to Morrill and Antonelli is denied.[8]

### Counts 2, 5, and 7

The plaintiffs did not respond to the defendants' arguments as to counts 2, 5, and 7, either in the plaintiffs' opposition brief or during oral argument. The defendants assert that the Court should deem these claims abandoned, an argument they reiterated during oral argument, ECF No. 46 at 14-15, and one to which the plaintiffs failed to respond. "Where, as here, a counseled non-moving party submits 'a partial response arguing that summary judgment should be denied as to some claims while not mentioning others,' that response 'may be deemed an abandonment of the unmentioned claims.'" *Camarda v. Selover*, 673 Fed. App'x 26, 30 (2d Cir. 2016) (quoting *Jackson v. Federal Express*, 766 F.3d 189, 195 (2d Cir. 2014)). "Even '[w]here abandonment by a counseled party is not explicit,' a court may infer abandonment 'from the papers and circumstances viewed as a whole.'" *Id.* (quoting *Jackson*, 766 F.3d at 196). *See Risica ex rel. Risica v. Dumas*, 466 F. Supp. 2d 434, 438 (D. Conn. 2006) ("When a party fails to address one

---

[8] Perkins's opposition brief appears to make a fleeting challenge to the towing of the vehicle. She cites her sworn interrogatory response that a Danbury police officer told her that "he was not going to tow the car" and that "he would park it at CVS so [she] could pick it up." ECF No. 42-2 ¶ 7. But Perkins did not allege a claim regarding the towing of her vehicle in her complaint, see ECF No. 32 ¶ 12 (alleging warrantless search of vehicle), nor is there evidence in the record that any of the defendants were involved in the decision to impound the vehicle or had reason to know that the decision was unlawful.

of the moving party's grounds for summary judgment, the court may deem the claim abandoned and grant summary judgment in favor of the moving party on that ground.")  Summary judgment is granted on counts 2, 5, and 7.

**Count 6**

In count 6, the plaintiffs allege that the defendants tortiously interfered with the plaintiffs' business expectancies.  ECF No. 32, Ct 6.

Under Connecticut law, "the elements of a claim for tortious interference with business expectancies are: (1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss." *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 27 (2000).  "A cause of action for tortious interference with a business expectancy requires proof 'that the defendant was guilty of fraud, misrepresentation, intimidation or molestation …; or that the defendant acted maliciously.'" *Jones v. O'Connell*, 189 Conn. 648, 660 (1983) (citation omitted).  "Stated simply, to substantiate a claim of tortious interference with a business expectancy, there must be evidence that the interference resulted from the defendant's commission of a tort."  *JKB Daira, Inc. v. OPS-Tech., LLC*, No. 3:20-CV-1564, 2022 WL 4484146, at *9 (D. Conn. Sept. 27, 2022)(internal quotation marks and citations omitted).

The defendants argue that the plaintiffs have failed to show tortious conduct.  ECF No. 39-1 at 20.  In response, the plaintiffs argue they "have demonstrated, particularly with regard to the defendant Halas but also regarding other defendants, a continuous and unrelenting effort to shut down their bail bond business despite the fact that it was a matter of public record that Ms. Moore, whom they claimed to be targeting, did not own the business and that the business in fact was

solely owned by the plaintiff Yvonne Perkins." ECF No. 42 at 8.  But they do not point to any specific evidence to counter defendants' argument that they have failed to demonstrate tortious conduct.  And in reviewing the record, even when taken as true and all reasonable inferences are drawn in the plaintiffs' favor, the evidence does not raise a genuine issue of material fact as to an underlying tort.  Specifically, the plaintiffs fail to point to any evidence that Halas made any untrue statements or provided any false information to the Connecticut Insurance Department or to American Surety Company.  Nor do they point to any evidence that Halas was a business rival of the plaintiffs or had any pecuniary interest in opposing the use of Moore Bail Bonds LLC by Connecticut police departments.  Nor do they point to any evidence suggesting that Halas or any other defendants harbored any ill will towards the plaintiffs.  No reasonable juror could find ill will merely because Halas and other defendants believed – rightly or wrongly – that police departments should not be accepting bonds from a firm whose apparent principal[9] had just been arrested for a felony related to the conduct of the bail bonds business.

Finally, with regard to defendant Maher, the evidence relied on by the plaintiffs is hearsay or otherwise inadmissible– in particular, (1) the report in a police department memo about Moore's and Perkins's complaints regarding statements Maher allegedly made to them and to an arrestee who was seeking a bond, and (2) the unsworn handwritten statement by the arrestee.  And in any event, the plaintiffs do not dispute that whatever Maher might have told the arrestee did not affect his decision to hire Moore Bail Bonds LLC, which means that the plaintiffs cannot satisfy the

---

[9] The plaintiff firm is called "Moore Bail Bonds LLC," not "Perkins Bail Bonds LLC."  And while the plaintiffs have submitted evidence that Perkins owned the business as of the time this action was filed, see Compl., ECF No. 1 ¶ 3 (complaint filed June 26, 2018 alleging that Perkins was sole owner and member of Moore Bail Bonds LLC); ECF No. 42-3 at 2 (printout from Secretary of State dated June 23, 2018 showing Perkins as sole owner), that evidence does not show who owned the business from 2014 through early 2017, when the defendants allegedly engaged in the conduct described in the complaint, including, apparently, assuming that Ms. Moore owned Moore Bail Bonds LLC.  In any event, even if Perkins did own the business at that time, there is no evidence in the record suggesting that Halas or any other defendants knew that.

actual loss requirement of a tortious interference claim.  Although the complaint alleges generally that Perkins has suffered emotional distress, ECF No. 32 ¶ 30, she makes no allegations that her emotional distress was related to the brief episode involving Maher and submitted no evidence on this point.  Summary judgment is granted on count 6.

## IV.    CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is granted on counts 1, 2, 5-7 and denied on count 3 as to Morrill and Antonelli.  As set forth in the Court's scheduling order, the joint trial memorandum is due November 8, 2024.  Jury selection is scheduled for December 4, 2024, with evidence to begin immediately after jury selection.  See ECF No. 49. The case is referred to a Magistrate Judge to conduct a settlement conference.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
        September 12, 2024